IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

WILLIAM NOONAN,                                                           CASE No.

                Plaintiff,

v.

JOHN DOE,                                                                 **CIVIL COMPLAINT**

                Defendant.
_____/

## COMPLAINT

Plaintiff, William Noonan ("Mr. Noonan" or "Plaintiff"), by and through his undersigned counsel files this Complaint for samages against the Defendant, John Doe ("Doe" or "Defendant"), and provides the following in support thereof:

### The Parties

1. Mr. Noonan is the Executive Vice President and Managing Director focused on Construction Risk and Insurance. From approximately April 2013 to April 2017, Mr. Noonan served as a Trustee on the General Service Board of Alcoholics Anonymous ("A.A."). Mr. Noonan is a resident of Palm Beach County, Florida.

2. Doe created, published and operated the website www.saveAA.org (the "Website"), which published information about A.A. and organized a group of subscribers to whom additional information was distributed. Upon information and belief, Doe is a resident of the state of Florida.[1]

### I.     Summary of the Action

3. A.A. is a worldwide twelve step fellowship of over two million men and women, who have formed approximately one hundred twenty-five thousand groups for alcoholic sobriety.

---

[1] At this time, the identity of Doe cannot be confirmed but will be confirmed through the initial discovery process. Upon confirmation of Doe's identity, this Complaint will be amended accordingly.

4.  Significant organizational and financial decisions begin at the annual General Service Conference ("GSC") through motions (the "Motions"). Motions that are approved by a two-thirds majority at the GSC become advisory actions ("Advisory Actions"), which are implemented by the twenty-one (21) Trustees of A.A.. The Trustees do not have the authority to unilaterally make decisions on behalf of A.A..

5.  In or about 2021, the Website was published by Doe to notify A.A. members of recent developments in the organization. The Website specifically named Mr. Noonan out to be responsible for the establishment of the Equitable Distribution of Workload Committee ("EDW") and maliciously asserts that EDW, and inherently Noonan, is responsible for self-approved changes that will eviscerate the fellowship of A.A..

6.  However, the Website omitted critical facts, specifically: (i) Noonan's tenure as Trustee predates the criticized changes, (ii) all significant changes implemented by the A.A. Trustees were passed by a two-thirds majority at GSC, and (iii) some of the referenced changes have not received a two thirds vote at GSC, and thus, have not been implemented by the Trustees.

7.  Doe's conduct qualifies as harassment and Mr. Noonan has suffered damages.

## II.  Jurisdiction and Venue

8.  This Court has original jurisdiction under 29 U.S.C. § 1332 because there is diversity between the parties and the amount in controversy exceeds $75,000.00, which will be proven at trial.

## III.  Factual Background

9.  A.A. was founded in 1935 by W. Wilson and R. Smith[2] and has grown to over two million members and more than one hundred and twenty-five thousand (125,000) groups in over

---

[2] The full name of each of the founding members has been omitted to preserve anonymity.

one hundred and eighty (180) countries. The only requirement for membership is a desire to stop drinking. There are no dues or fees for A.A. membership.

10. As A.A. has grown, greater structural organization has been necessary to ensure that individuals continue to have free access to recovery from alcoholism in perpetuity.

11. W. Wilson determined that A.A.'s early leadership would not be succeeded by new people, rather early leadership would be succeeded by the collective membership of the groups of A.A.. Final authority is held by the estimated one hundred twenty five thousand (125,000) groups of A.A. with A.A.'s Trustees of General Service Board at the bottom of this hierarchy. A diagram of A.A.'s structure is attached hereto and incorporated by reference herein as **Exhibit A**.[3]

12. The hierarchy of A.A. is as follows:

   a. At the top, are the estimated one hundred and twenty-five thousand (125,000) A.A. Groups. Each A.A. group elects a General Service Representative ("GSR") as its voting representative in district and area matters. A GSR votes on issues at district meetings and votes to elect District Committee Members ("DCM").

   b. GSRs and DCMs vote on organizational matters at area meetings and vote to elect the Area Delegate (the "Delegate").

   c. The Delegate represents the area at the annual GSC where matters of A.A. are considered, discussed and put to a vote by approximately one hundred and thirty-five (135) voting members.

   d. The voting members of the GSC are as follows: (i) ninety-three Area Delegates; (ii) twenty-one trustees of the A.A. General Service Board, (iii) six (6) non-trustee directors from A.A. World Services ("A.A.W.S."), and (iv) fifteen (15) staff

---

[3] This structure applies to A.A. in North America and Canada.

members from the General Service Office, consisting of AAWS, The Grapevine, and La Vina. Each of the one hundred thirty-five (135) voting members has one vote.

13. Large matters of policy and finance of A.A. are made at the annual GSC and require a two-thirds majority vote. Once matters receive the two-thirds majority vote, they become Conference Advisory Actions and are referred to the twenty-one Trustees of the AA General Service Board, who then allocate each Advisory Action to the appropriate Trustee committee or service corporation for implementation. The Trustees report back through quarterly reports what actions have been taken with respect to each Advisory Action.

*14.* From approximately April 2013 to April 2017, Mr. Noonan served as a Trustee on the A.A. General Service Board.

15. Sometime after January 1, 2021, John Doe used services provided by Wix.Com and Network Solutions to publish and spread factually incorrect, derogatory and defamatory statements regarding Mr. Noonan's service as an A.A. Trustee.

16. Doe maliciously and inaccurately asserts that Noonan, in his capacity as a Trustee, made changes to A.A. that he warns will eviscerate Alcoholics Anonymous. Doe attributes recent changes in A.A. to Mr. Noonan although such events occurred after the expiration of Mr. Noonan's tenure as a Trustee. These assertions also recklessly overlook that many of the cited changes were voted on at the General Service Conference and received a two thirds majority vote.

17. Specifically, Doe published the following on the Website:

> The Group Conscience of all 2.1 million members worldwide is being ignored. 135 delegates, trustees, and staff are making decisions and changes for all of AA based on their own personal and political views and beliefs. We need to get AA back into the hands of the worldwide fellowship of Alcoholics Anonymous. The Trustees, the Delegates, and our GSC have violated the 12 Traditions in these ways:

In 2021, under the cover of the pandemic, in the dead of night, Delegates, Trustees and GSO staff changed the following things without membership consent:
- Changed Preamble from "men and women" to "people"
- Self-approved changing and rewriting of the 12 and 12
- Self-approved changing and rewriting the Big Book into "plain language" (an outside political issue) by outside nonalcoholic writers
- Changing the Medical Opinion and Religious Opinion in the Big Book
- Conjured and created the "Equitable Distribution of Workload Committee"

In 2016, a small group of trustees, Billy Noonan (Monica Francois' service sponsor), Homer Moeller (On the AAWS Board of Directors), and Josh Eggleston ( Chair of the Grapevine Board of Directors) created EDW. This was passed in 2021. This subcommittee consolidates the power for all of AA to a very small group of politically like-minded people who are changing AA based on their outside political views. It rerouted all agenda items to the correction committee (Monica Francois) and other committees.

In these committees they decide to do 3 things: push it through to conference, change it, or throw it away without oversight or discussion with AA.

All agenda items submitted to change AA back which disagreed with their personal political position were "filed away" (thrown in the garbage.)

Pronoun, gender, and language politics is still politics and an outside issue. This level of disunity will destroy AA forever.

Other movements before AA allowed outside issues into their fellowship and they perished:
- The Washingtonian Movement had over one million members within 2 years and disintegrated completely in 6 months after getting involved in the outside political movement for the abolition of slavery and prohibition
- The Emmanuel Movement started out with a focus on God and relaxing the mind and turned into a movement of "clinicians" practicing psychotherapy. These disbanded within months.

- The Oxford Group failed because they were aggressively evangelical. They used religion (an outside issue). They strayed from being non-denominational and set out to save the world.

18. The Website also provided a flyer entitled "A.A. in the Time of Dissolution" that is available for download (the "Flyer"). The Flyer also individually names Mr. Noonan, maliciously mischaracterizes his service as an A.A. Trustee, and holds him accountable for the inevitable

evisceration of A.A.. The Website encourages individuals to share the Flyer with other members of A.A. and in A.A. meetings. A copy of the Flyer is attached hereto and incorporated by reference herein as **Exhibit B**.

19. The Website also collected subscribers to continue to distribute misinformation.

20. Through the Website, Doe published false, derogatory and defamatory statements that have grossly and maliciously mischaracterized Mr. Noonan's character and service as a Trustee on the A.A. General Service Board.

21. Doe's conduct towards Mr. Noonan qualifies as harassment.

22. On or about October 27, 2022, Mr. Noonan sent both Wix.com and Network Solutions a cease and desist letter to demand removal of the Website from the internet.[4]

23. On or about November 11, 2022, undersigned counsel received an electronic message from Doe with the address of saveaa1935@gmail.com providing notice that the Website had been removed.[5]

24. On or about November 11, 2022, Mr. Noonan through his undersigned counsel responded to Doe's message requesting a meeting with Doe to discuss the damages incurred by reason of the Website, distribution of the Flyer and the organization and dissemination of false information to the mailing list subscribers. Doe did not provide any response.

25. On or about November 16, 2022, Mr. Noonan through his undersigned counsel sent a demand letter to Doe requesting confirmation of his identity and a meeting for the purposes of resolving issues created by the Website, Flyer and the dissemination of information to the mailing list subscribers. Again, Doe did not provide any response.

---

[4] Wix.com and Network Solutions were the internet companies used by John Doe to publish and host the Website.
[5] The email address is assigned to the name John Murphy.

26. Although the Website has been removed, Mr. Noonan wants to take necessary action to prevent future publishing of defamatory information and incidents of harassment.

27. Mr. Noonan has incurred significant expenses for removal of the Website and to protect himself against future defamation and harassment by Doe.

28. Mr. Noonan has made a good faith effort to resolve all issues with Doe without the need for litigation. Doe has been uncooperative, and thus, Mr. Noonan's efforts to avoid litigation have been unsuccessful.

29. Doe's harassment has caused Mr. Noonan to suffer damages to his character and reputation and in an amount that exceeds $75,000.00, which will be proven at trial.

## Count I: Defamation Per Se

30. Mr. Noonan realleges and incorporates the allegations set forth in paragraphs 1 through 29 above.

31. Defendant maliciously made false and misleading statements about Mr. Noonan and his service as a Trustee of A.A. on the Website and through the Flyer by falsely accusing Mr. Noonan of establishing the Equitable Distribution Committee and participating in pushing through items that will eviscerate A.A. without proper oversight.

32. Defendant maliciously and knowingly, or recklessly in any unknowing, published false and misleading statements about Mr. Noonan and his service as a Trustee of A.A. through the Website, Flyer and mailing list without including relevant and critical information, such as: (i) the dates of Mr. Noonan's tenure as Trustee, (ii) citing changes that have not been effectuated by becoming Committee Advisory Actions, and (iii) failing to include that matters were passed by a two thirds majority at the GSC.

33. By operating the Website, distributing the Flyer, and organizing the mailing list, the Defendant has publicly published false, misleading and defamatory information about Mr. Noonan that was widely accessed by citizens of Florida, citizens of the United States and any party with internet access.

34. Defendant maliciously and knowingly, or recklessly in any unknowing, accused Mr. Noonan of conduct that will destroy A.A..

35. Mr. Noonan has suffered damages as a consequence of the Defendant's conduct in an amount that will be proven at trial.

### Count II: Defamation

36. Mr. Noonan realleges and incorporates the allegations set forth in paragraphs 1 through 29 above.

37. Defendant maliciously made false and misleading statements about Mr. Noonan and his service as a Trustee of A.A. through the Website, Flyer and mailing list by falsely accusing Mr. Noonan of establishing the Equitable Distribution Committee and participating in pushing through items that will eviscerate A.A. without proper oversight.

38. Defendant maliciously, and knowingly, or recklessly in any unknowing, published such false and misleading statements about Mr. Noonan and his service as a Trustee of A.A. through the Website, Flyer and mailing list without including relevant and critical information, such as: (i) the dates of Mr. Noonan's tenure as Trustee, (ii) citing changes that have not been effectuated by becoming Committee Advisory Actions, and (iii) failing to include that matters were passed by a two thirds majority at the GSC.

39. By operating the Website, distributing the Flyer, and organizing the mailing list, the Defendant publicly published false, misleading and defamatory information about Mr. Noonan

that could be widely accessed by citizens of Florida, citizens of the United States and any party with internet access.

40. Defendant maliciously and knowingly, or recklessly in any unknowing, accused Mr. Noonan of conduct that will destroy A.A..

41. Mr. Noonan has suffered damages as a consequence of the Defendant's conduct in an amount to be prove at trial.

### Count III: Intentional Infliction of Emotional Distress

42. Mr. Noonan realleges and incorporates the allegations set forth in paragraphs 1 through 29 above.

43. The Defendant's conduct described herein constitutes outrageous conduct that qualifies as deliberate or reckless infliction of emotional distress onto Mr. Noonan.

44. Defendant's outrageous conduct qualifies as harassment and has caused Mr. Noonan severe emotional distress.

45. Mr. Noonan has suffered damages as a consequence of the Defendants' conduct in an amount to be proven at trial.

### Jury Demand

Mr. Noonan demands a trial by jury in this action.

### Reservation of Right for Punitive Damages

Mr. Noonan reserves the right to claims for punitive damages upon a reasonable showing of the basis for such a claim..

### Prayer for Relief

Wherefore Plaintiff, Mr. William Noonan respectfully requests the following relief from this Court: (i) An award of damages to be determined at trial to compensate Mr. Noonan for all monetary and non-monetary compensatory damages, consequential damages, punitive damages,

litigation costs and attorneys' fees related to but not solely limited to the defamation *per se*; (ii) the Defendant is immediately required to cease distribution of the Flyer and publication of any information about Mr. Noonan through any communication medium, including but not limited to the internet, electronic messages and mail; and (iii) any further relief that this Court deems just and proper.

**Tromberg, Morris & Poulin, PLLC**
/s/ April Hosford Stone
Attorney for Secured Creditor
1515 South Federal Highway, Suite 100
Boca Raton, FL 33432
Telephone #: 561-338-4101
FBN 0091388
ecf@tmppllc.com
astone@tmppllc.com

# EXHIBIT A

# Exhibit B